## STATE v. PADGETT.

1. Where jurisdiction of a misdemeanor is conferred upon an inferior court, the Court of General Sessions has also jurisdiction, unless in terms denied to the superior tribunal, or exclusively given to the inferior.
2. The Court of General Sessions has jurisdiction of the offense of selling seed cotton at certain hours; for the statute prohibiting such sale confers jurisdiction upon that court as well as upon the court of trial justices, and imposes as a punishment a fine of $50, or imprisonment for thirty days, *or both*, which last alternative is beyond the jurisdiction of the inferior court.
3. A trial justice, having issued his warrant for the arrest of the defendant, did not thereby assume to his court jurisdiction to try the case.
4. The amendment by the legislature of a statute which was not clearly expressed, does not show that the former statute was incapable of execution.
5. "An act to prohibit the sale of seed cotton between the time of the setting and rising of the sun," prohibited such sale "between the hours of sun-

down and sunrise of any day." *Held,* that the time within which the sale was forbidden by this act, was between sunset and the next succeeding sunrise, and that the offense was sufficiently charged in an indictment alleging a sale "at nine o'clock in the night of the same day."

Before HUDSON, J., Orangeburg, October, 1881.

These were two prosecutions against the same defendant, Joel Padgett, for selling seed cotton on November 2d, 1880. In one case, the alleged sale was of three hundred pounds at nine o'clock at night, and in the other, of two hundred pounds at ten o'clock at night. Other facts are stated in the opinion.

*Mr. M. I. Browning,* for appellant.

*Mr. Solicitor Jervey,* contra.

December 11th, 1882. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. These were indictments under the act of 1877, "To prohibit the sale of seed cotton between the time of the setting and rising of the sun, and to regulate the sale of seed cotton." 16 *Stat.* 266. The only difference between the two cases was as to the amount of cotton alleged to have been purchased and the hour of the night at which it was done, and therefore they were heard together.

The cases were commenced as usual by warrants for arrest of the defendant, issued by a trial justice, who, after examination, bound over the defendant and sent the cases up to the Court of General Sessions for trial. The indictments charged "That Joel Padgett, late of the county and State aforesaid, on the second day of November, 1880, with force and arms, at Willow township, in the county and State aforesaid, at *nine o'clock in the night of the same day,* did unlawfully buy," &c.

The cases were tried by Judge Hudson. The defendant denied the jurisdiction of the Court of General Sessions, claiming that the trial justice, having issued the warrants of arrest, had exclusive jurisdiction to try the cases. The judge refused to sustain

the objection and sent the cases to the jury. The verdict was "guilty" in both cases, and the judge in each case sentenced the prisoner "to pay a fine of twenty-five dollars and costs, or be imprisoned in the county jail for a period of thirty days."

The defendant moved in arrest of judgment, which was refused, and he now appeals to this court and renews the motion upon the following grounds: First. Because his Honor erred in overruling the pleas to the jurisdiction made in said actions, the defendant contending that this court and the court of trial justice having concurrent jurisdiction of the offenses charged, and the proceedings having originated in the latter court, that the actions should have proceeded to judgment therein. Second. Because the allegations in the indictment, that the said offenses were committed "in the night time," does not state the offense created by the statute which forbids the "buying," &c., "between the hours of sundown and sunrise of any day."

First. The offense created by the statute, which is charged in this case, did not exist at the time the constitution was adopted, but that instrument contains a provision which covers it. By section 18 of article IV. of the constitution it is provided, "That the Court of General Sessions shall have exclusive jurisdiction over all criminal cases which shall not be otherwise provided for by law." If the jurisdiction is otherwise provided for, the exclusive jurisdiction of the Court of General Sessions is taken away, but not its jurisdiction. That remains and is concurrent with that of the other tribunal, unless to the inferior jurisdiction exclusive jurisdiction is given, or unless to the superior tribunal all jurisdiction should be *in totidem verbis* denied. "A statute which simply confers jurisdiction of a crime on an inferior court generally, and not exclusively, cannot be considered to deprive the Court of General Sessions of its jurisdiction, but the jurisdiction remains concurrent with that of the Superior Court." *State* v. *Williams*, 13 *S. C.* 548.

This case does not fall under section 19, article I. of the constitution, which provides "That all offenses less than felony, and in which the punishment does not exceed a fine of $100, or imprisonment for thirty days, shall be tried summarily before a justice of the peace, or other officer authorized by law." It

does not do so for the reason that the punishment of the offense, imposed by the act, may be both fine and imprisonment, so that exclusive jurisdiction is not given to the trial justice from the nature of the punishment imposed. *State* v. *McKettrick,* 14 *S. C.* 350. And besides the act itself, which creates the offense, provides " That any person, &c., upon conviction in the Court of General Sessions or of a trial justice, shall be fined in the sum of fifty dollars, or imprisoned in the county jail for a period of thirty days, or both, in the discretion of the court." 16 *Stat.,* *supra.*

It is said, however, that whilst jurisdiction is expressly given by the act to the Court of General Sessions, it is also given to the court of trial justice, and the jurisdiction being concurrent, and the court of trial justice having first assumed jurisdiction, that of the Court of General Sessions is ousted. There is no conflict of jurisdiction here. The trial justice court is not claiming jurisdiction. It is the duty of the trial justice to issue his warrant of arrest in all proper cases when applied for. We do not think this initiation of the proceedings is assuming jurisdiction to try the case, but merely a preliminary step to arrest the party, which is necessary to his being tried in any court. The trial justice did not claim jurisdiction to try the case, but upon examination sent it to the Court of General Sessions to be tried there. We see no error in that court taking jurisdiction and trying the case.

Second. The other objection is that the offense being one created by statute, was not sufficiently set forth in the indictment. The words of the act are : " That it shall not be lawful for any person to buy or sell, or receive by way of barter, exchange or traffic of any sort, any seed cotton between the hours of sundown and sunrise of any day." The indictment charges that " Joel Padgett, on the second day of November, 1880, at nine o'clock in the night of the same day, did unlawfully buy," &c., and the question is whether the indictment sufficiently charges the offense created by the act. This is more a question of construction of the act than of pleading. It is certainly true that the act of the legislature is not very clearly expressed, and on that acccount, perhaps, the legislature, in December, 1880,

amended its phraseology.   But that was after the offense charged
here had been committed, and can have no effect upon this case,
which must stand or fall according to the terms of the law as
originally expressed.   Nor, on the other hand, do we think that,
because the legislature chose to amend the law which was not
clearly expressed, we would be justified in assuming from that
fact, that, in the opinion of the legislature, the law as it origi-
nally stood was incapable of being enforced, and the original act
was repealed and not merely amended by the last acts.   The
question simply is, whether under the original act, unaffected by
the subsequent amendment, this indictment sufficiently sets forth
the statutory offense charged therein.

The rule in regard to indictments framed to cover offenses
created by statute is, " that the offense should be set forth with
clearness and certainty, and must be so described, if not in the
very words of the statute, so as to bring it substantially within
the provisions of the statute."   1 *Arch.* 286 ; *State* v. *Vill,* 2
*Brev.* 262 ; *State* v. *Cunningham,* 2 *Spears* 246 ; *State* v. *Cullum,*
*Ib.* 582.   In the case from Brevard the court say :   " The offense
is charged in the indictment substantially and sufficiently pur-
suant to the statute, and although there is not a perfect simi-
larity in the words, there is no variance in the sense, nor can the
variance create any doubt in the operation or construction of the
law."

In the case before us the words of the act are, " between the
hours of sundown and sunrise of any day," and the words of
the indictment are, " in the night-time."   Does the indictment
charge that the offense was committed substantially at the time
forbidden by the act ?   We can have no doubt of what was the
intention of the legislature in the use of the words " between
the hours of sundown and sunrise of any day."   The object of
the legislature manifestly was to make criminal the sale of such
cotton in the night-time.   In construing an act we have a right
to refer to the title, and the title of this act uses the words
" between the time of the setting and rising of the sun," without
reference to any day, which shows what was the intention.
From these words can there be a reasonable doubt that the

intention was to express the period of time lying between sun-down of one day and sunrise of the next? The law-makers, taking as a starting-point sundown, evidently intended to count forward and not backward, to include the period of time succeeding and not preceding the setting of the sun, the period of darkness until the next and not the period of light back to the last "rising of the sun."

But it is urged that the superadded words in the act, " of any day," negatives this construction; that the use of these words, which have lately been repealed, makes it necessary to inquire whether the night can be said to be " of " the day—that is to say, belonging to or proceeding from the day. The division of time which most strikes us, is that into day and night. One rotation of the earth in twenty-four hours produces a period of light and a period of darkness of about equal length, and it is entirely conventional at what point of the circle we begin to make the count; but of the two periods, that of light, the artificial day, is the most important to us, and from this or some other cause we habitually, in common parlance, speak of the night which succeeds a day as the night " of " that day—that is to say, the night that follows, that belongs to that day. "A day is usually intended of a natural day, as in an indictment of burglary we say in the night of the same day." *Co. Litt.* 135.

The framers of this act doubtless used the words "of any day" in this sense, and meant the whole period of darkness between sundown of one day and sunrise of the next. According to this construction, the period of time within which the statute inhibited the purchase of seed cotton was the whole of the night succeeding, following, the day indicated, and the charge that the offense was committed in the night succeeding the day of November 2d, 1880, is substantially in accordance with the sense of the act, although not with its exact words. It is insisted that we cannot thus reach the intention of the act, but must construe its words according to their technical meaning, and that thus construed, it cannot be said that the night is "of" the day—that being a penal statute it must be construed strictly. That certainly is the rule, but proper construction in order to ascertain the intention, surely is admissible.

In the case of *State* v. *Brown*, 2 *Spears* 136, Judge O'Neall says: "It is said penal statutes are to be construed strictly and nothing is to be included in them by intendment. There is no doubt this is the general rule, but it is also a rule that the courts are not to narrow the construction so that offenders may escape. 'We are to look to the words in the first instance,' said Buller, J. (1 *T. R.* 96), 'and when they are plain we are to decide on them; if they are doubtful, then we are to have recourse to the subject-matter,' and in a late work (*Dwarris on Statutes* 79) it is said, 'Statutes, though penal, have been taken by intendment to the end that they should not be illusory, but should take effect according to the express intendment of the makers of the act.'" And in the case of *State* v. *Cunningham, supra,* it was held that "when the intent of an act is plain, to effect it, words and even parts of sentences may be transposed." It is true that the word "night" does not appear in this act, but who can doubt that it was intended by the words "between the hours of sundown and sunrise of any day."

If, notwithstanding the manifest intent, we must be limited to the scientific meaning of the words, then we agree that the division of time adopted by Pope Gregory XIII., is a part of our law. According to that calendar the civil, as distinguished from the artificial "day," is defined to be "the whole time or period of one revolution of the earth on its axis, or twenty-four hours," called the "natural day." "And the evening and the morning were the first day." *Genesis, ch.* 1. In this sense the day may commence at any period of the revolution. The Babylonians began the day at sunrising, the Jews at sunsetting, the Egyptians at midnight, as do several nations in modern times, the British, Spanish, American, &c. This day, in reference to civil transactions, is called the civil day. Thus, with us, the day on which a legal instrument is dated, begins and ends at midnight. *Webster's Dictionary, Unabridged.*

Even according to this scientific definition of the word "day," the act in question prohibited the purchase of seed cotton between the hour of sunset and the middle of the night succeeding, that being the end of the previous day. The indictment charged that the offense was committed "at nine o'clock in the night of

the same day," viz., November 2d, 1880. That was within the time covered by the act, according to the strictest construction, and we cannot say that this manner of stating the offense as to time, was insufficient under the statutes.

The judgment of this court is that the judgment of the Circuit Court in each of the cases stated be affirmed, and the appeal dismissed.